Curia, per
Butler, J.
The doctrine recognized in the case of Hunter vs. Stephenson, 1 Hill, 415, seems to be this — that every execution unsatisfied on the face of it, is, prima facie, authority to sell; but this, as Mr. Justice *21 O’Neall remarks, “may be rebutted by the defendant. He may shew that, before the sale, the.execution was paid, and thereby the sheriff’s authority te sell was ended.” Satisfaction, in fact, must be regarded as the termination of the authority of a sheriff to act under legal process, so far as he may have acquired a right under it to convey title to another. No conveyance can be good, which rests upon that which is null and void. Such is not the consequence of a mere irregularity. There are, no doubt, many cases in which this general principle would be qualifier, so far as it regards the liability of the sheriff for trespass. As where the defendant, having receipts in his possession of money paid to the plaintiff, but the knowledge of which he has not communicated to the sheriff. In a case like that, he ought not to be permitted to take advantage of his own wrong, in an attempt to hold the sheriff liable for a trespass in seizing his property for sale. In the case supposed, a defendant always has it in his power to prevent the mischief — a sale to an innocent purchaser without notice. Under this general view, the defendant, Vaughan, could not be protected in his purchase at sheriff’s sale. By their verdict, .the jury have established the fact of notice ; ’ and also, that the executions under which the sale took place had been fully satisfied, according to the computation of the clerk, made under the direction of the presiding Judge. The data upon which the calculation' was made, were afforded by memoranda and entries made by the sheriff himself, and did not depend on receipts which the plaintiff may have had in his own possession, and which w'ere unknown to the sheriff at the time of sale. The result of the clerk’s calculation is questioned, on the ground that the sheriff was not allowed as much costs for levies as he was entitled to by law. I am not satisfied but that if the sheriff had been allowed all that was contended for, the executions would have been still unsatisfied. From what was stated at the bar, and from my own impression, I am inclined to think that such was the fact. In any view of the matter, it is not a case in which we should struggle to sustain the sale. There seems to have been a reckles indifference to the feelings and rights of the plaintiff, Thrown *22 er, from the manner in which his property was taken from him and sacrificed at sheriff’s sale. When he supposed he had settled every thing' in the sheriff’s office, by the sale of his land and other property, the sheriff seizes on the small remnant of property to satisfy a few dollars of costs, which, he contended, was still due him, for .sundry levies made on executions that were satisfied, so far as it regarded the demands of the plaintiff on them. The validity of the sale in question is made, therefore, to depend on this narrow question. Has the sheriff a right to charge, as levies, the indorsements on several executions of property taken into his possession by one seizure ? It seems that when the sheriff made one seizure, he endorsed a memorandum of it on all the executions in his office, as so many levies, and charged one dollar for each. If he could be permitted to do this, it is possible, from what appears to the court, that some very small amount may have been due on the executions at the time of sale. As I laid down the principle on the circuit, the sheriff should have been permitted to charge for one levy, when it consisted of one seizure, but should not charge for a levy according to every memorandum on eaeh execution. As, for instance, when the sheriff took possession of one flock of sheep, or one gang of negroes, at the same time, this should be regarded as one levy, to be entered on all the executions in the office, for the purpose of giving effect to sales made under any of the executions. The title being conferred on the sheriff, by virtue of his possession of the property, the entries on different executions might be referred to as his instructions and convenient explanation of his authority.
I further held, that when one of these levies was exhausted, or when the property embraced in several levies, as the case might be, had been exhausted by sale, then that the sheriff should be at liberty to make and charge for another. To prevent these repeated levies, which would increase the cost by mileage, the sheriff should, in the first instance, mafep a sufficient levy. But where he has been prevented from doing so by the act of the defendant, or from any other good cause, he would have a right to make repeated levies, and charge for each. But not to *23 make one levy on a horse, for instance, and charge a fee for.it on twenty executions, if he should have so many in his office. A defendant can always prevent separate and repeated levies, by giving up, in the first instance, property to satisfy- executions against him, or all the property he has, when he is unable to satisfy them. At any rate, he could prevent flagrant abuse on the part of the sheriff. The mere entry of a levy on an execution, is not ipso facto a levy in law. For instance, suppose the sheriff, never having seen the article of property, makes an entry of it on his execution, this is not a levy which could give him authority to sell. Sometimes sheriffs take and enter what are called levies by consent. I hold that these are not Such levies as are contemplated in law, and, without subsequent possession, are not such as could be charged for under the fee bill; which goes to shew that the act of seizure, and not the entry, constitutes the legal ingredient of levy.. .
The Act of the Legislature of-1839, in relation to the duties of sheriffs, fully sustains me in these views. The 47th section of that Act is as follows — “ The sheriff shall make a memorandum, in writing, of the date of every levy-, and specify the property on which such levy has been made, on the process or in a schedule thereunto annexed ; and if more than one process be levied on such property, reference on each shall be made to such memorandum or schedule.” This clause has two objects in view; to ascertain the date of the levy, and to preserve on the executions upon which it might operate, the evidence of it. 'When property is levied on under a junior execution, the levy is good, ipso facto, so far as it regards the senior executions in the office. The property becomes liable to pay the costs for one levy, as soon as it is seized by the sheriff, and it is immaterial upon which execution it is charged, so far as it regards the defendant. According to the doctrine contended for, if a levy is made under a junior execution by the order of the plaintiff in such' execution, the. sheriff has a right to endorse that levy on all the senior executions in his office, and to charge a dollar for each; although, Without such levy, thé senior executions would have taken *24 the money by virtue of the former levy. Where there has been a levy on a senior execution, and the money is paid on it, then the sheriff may merely seize the property under subsequent executions when he has orders to proceed on them. In this way, there might be a succession of separate levies on the same piece of property. But when the sheriff has many executions, and has orders to proceed in all, then he should enter the levy on each, and charge according to the number of levies which, in fact, he has made. Or he might levy under one and make entries on all. There being no more trouble to make levies under fifty executions than under one ; the trouble and expense of the sheriff being the same in both instances. The levy'made under one execution, and the memorandum of it on several papers, are very distinguishable things. The one is the act which gives the sheriff his title, and the other is the evidence by which that act may be indicated and explained. In principle, it is like the case where property of a defendant is advertised fqr sale, by notice of sundry executions against him. One advertisement will be sufficient for the purpose of effecting a sale in all the cases. For the purpose of acquiring title in the sheriff, and for completing his authority to sell, one levy and one advertisement will be legally enough. It is not the number of levies that confers the authority on each, or the number of advertisements that will complete it. The rule that controls the one should be applicable to the other. As it regards advertisements, it has been settled in the case of the State vs. Beckett, 3 McC. 290, that “ where there are a number of plaintiffs having executions against the same defendant, and his property is advertised under their executions, the sheriff is still entitled to the costs of but one advertisement, as all the plaintiffs’s names can be put into one advertisement.” According to these views, the computation of the sheriff’s costs was correctly made, and there being nothing due on the executions at the time of the sale to defendant, it must be held invalid, as found by the' jury. Motion refused.
Richardson, Q’Neall, Evans and Frost, JJ. concurred.